UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00235-MOC-DLH

| | | |
|---|---|---|
| JILL SEYMOUR AND | ) | |
| CAROLYN ELIZABETH GRIFFITH, | ) | |
| INDIVIDUALLY AND AS GUARDIANS AD | ) | |
| LITEM FOR K.G. AND T.G., MINORS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| ARJANA ROSIC | ) | |
| ANTHONY CRAWFORD GRAY | ) | |
| C&A TRANSPORT, LLC | ) | |
| SAMIR DURATOVIC | ) | |
| COCO TRANSPORTATION, LLC | ) | |
| DZEVAD AHMETASEVIC | ) | |
| COCO SERVICES, LLC | ) | |
| ROCKY TRANSPORT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on defendant Dzevad Ahmetasevic's Motion to Dismiss (#2) for lack of personal jurisdiction. Having considered defendant's arguments in support, plaintiffs' Response, and defendant's Reply, the court will deny the motion.

I.

Based on the allegations found in the Complaint, this action involves a motor vehicle accident on the highways of North Carolina that occurred when an axle assembly on a tractor trailer broke loose striking the vehicle in which plaintiffs and/or their wards were traveling. Operating under a number of corporate names, some of which are allegedly dissolved, defendants

all appear to be engaged in the interstate transportation of goods for hire, with at least one ineligible entity allegedly using the USDOT Number (1880464) to transport goods in interstate commerce.

Taking the allegations of the Complaint as true and drawing all reasonable inferences in favor of plaintiffs on defendant's Motion to Dismiss, it appears that – with the exception of the driver – defendants are operating a family trucking business in Iowa. While all the entities appear to be owned by the same family and operated from common facilities in Iowa, the corporate structure – at least on paper -- is complex. The defendant trucking businesses and their owners or members appear to be operating under a number of corporate entities, some of which have been administratively dissolved but continue to operate.

On the transport side of the business, it appears that defendants started in the trucking business under the name Coco Transportation, LLC ("Coco"), an entity that was administratively dissolved in 2013, but which apparently continues to solicit the transportation of freight and do business both in its own name and in the name of its successor in interest, C&A Transport, LLC ("C&A"). C&A is alleged to be an ongoing for-hire motor carrier authorized to carry goods in interstate commerce under USDOT No. 1880464. Plaintiffs allege that in addition to Coco, Rocky Transport, LLC ("Rocky"), which is another administratively dissolved entity, transports freight in interstate commerce utilizing C&A's USDOT number despite not being authorized as a for hire motor carrier. All of these entities appear to be owned by members of the same family. While the Complaint has been heavily redacted going so far as to eliminate even the physical location of the corporate entities, it appears that all these entities operate from the same physical location in Waterloo, Iowa. Complaint at ¶ 16. Defendants Samir Duratovic and Anja Rosic, husband and wife, are allegedly the managing members of these corporate entities, with Defendant Duratovic

allegedly supplying the trucks and trailers to the business as an "independent contractor" according to the "Carrier Operation Description." Complaint at ¶¶ 18-19.

On the maintenance side, plaintiffs allege that Dzevad Ahmetasevic – a cousin of defendant Defendant Duratovic – provide the trucking business(es) with tractor and trailer maintenance. Complaint at ¶ 20. Important to the personal jurisdiction analysis, plaintiff allege that not only was Defendant Ahmetasevic an employee and agent of the trucking concern, he was a "<u>partner</u> of Duratovic, Rosic and Coco Services." Id. (emphasis added). Plaintiffs allege that not only was Defendant Ahmetasevic responsible for the repair and maintenance of the tractor-trailer involved in this accident, he was not a qualified inspector as that term is defined under the 49 C.F.R. § 396.19. Plaintiffs allege that the corporate entities as well as their members knew of Defendant Ahmetasevic's lack of competence in the field.

Plaintiffs also allege that the defendants conspired with each other to routinely avoid federal transportation safety laws, Complaint at ¶64, that the corporate veil should be pierced, Complaint at ¶¶ 71-76, and that joint enterprise liability should be imposed due to defendants' willful indifference to their obligations under the Federal Motor Carrier Safety Regulations

II.

On December 20, 2013, Defendant Gray was driving the C&A tractor-trailer Eastbound on US Highway 23 in Haywood County, North Carolina. With a full load of chicken parts, the rear axle of the trailer broke away from the rusted chassis due to the failure of a structural member holding the rear axle mount. Complaint at ¶¶ 46-47. When the axle broke free, the trailer's air brake connection also dislodged, causing the now freed axle to lock up when the axle's spring

activated brakes engaged,[1] which in turn caused the axle to bounce end-over-end down the highway rather than continue to roll. Complaint at ¶ 48. Defendant Gray was traveling in the right lane of US 23 Eastbound, with plaintiffs were traveling in the left lane in the same direction. The axle tumbled toward and collided with the minivan, injuring the plaintiffs. Complaint at ¶ 50.

III.

Defendant Ahmetasevic contends that this court lacks personal jurisdiction over him and that he is entitled to be dismissed from this action. He argues that he lacks the necessary minimum contacts for the assertion of general jurisdiction over him and that plaintiffs' "stream of commerce" theory to invoke specific jurisdiction in legally flawed.

Rule 12(b)(2), Federal Rules of Civil Procedure, provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiffs' "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court

---

1  As the court understands it, a "spring brake" is a failsafe braking mechanism which engages when the air brake on a trailer fails or is suddenly disconnected, bringing a tractor-trailer to a safe stop when the axle is attached to the trailer.

must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and must draw the most favorable inferences for the existence of jurisdiction. Id.; see also Thomas v. Centennial Commc'ns Corp., 2006 WL 6151153, at *2 (W.D.N.C. Dec. 20, 2006).

Plaintiffs must show that the exercise of personal jurisdiction over a defendant complies with the forum state's long-arm statute and the constitutional requirements of due process. Grober v. Mako Products, Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012), reh'g denied (Sept. 14, 2012). Since North Carolina's long-arm statute extends jurisdiction to the outer limits of due process, the jurisdictional analysis merges into a single due process inquiry. Thomas, 2006 WL 6151153, at *2. To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a non-resident defendant if the defendant has contacts with the State that are so "continuous and systematic" as to render them "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).

A court may exercise general jurisdiction over a non-resident defendant if the defendant has contacts with the state that are so "continuous and systematic" as to render them "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). The court cannot find allegations sufficient to establish general jurisdiction over this

defendant.

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant in a cause of action that arises out of the defendant's activities in the forum state. In analyzing specific jurisdiction over a defendant, courts consider whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Grober v. Mako Products, Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012) (citation omitted). Plaintiff has the burden of making a prima facie showing of specific jurisdiction by satisfying the first two elements. The burden then shifts to defendant to show that such assertion of personal jurisdiction is not reasonable and fair. Id.

Here, plaintiffs appear to rely on a "stream of commerce" theory to assert specific jurisdiction. The United States Supreme Court has held that the "stream of commerce" theory of personal jurisdiction relates to specific jurisdiction, rather than general jurisdiction. Goodyear Dunlop Tires Operations, S.A. et al. v. Brown et ux., ___U.S. ___, ___, 131 S.Ct. 2846, 2852, 180 L.Ed.2d 796 (2011). Plaintiffs contend that Defendant Ahmetasevic, in concert with the other defendants, knowing signed off on a trailer he knew or should have known was not roadworthy and which he knew failed to meet road safety standards as established under federal law. They contend that he knew the trailer was used in interstate travel under the corporate defendant(s)' USDOT number and that he should have reasonably anticipated that a failure of such equipment could result in personal injury wherever that trailer travelled, including the roads of North Carolina.

A *prima facie* case of personal jurisdiction over an alien defendant can be made by meeting a stream of commerce standard in conducting the specific jurisdiction analysis. This standard requires that (1) the alien defendant placed the accused product into the stream of commerce, (2) the alien defendant knew or should have known the likely destination of the product, and (3) the alien defendant's conduct and connections with the forum state are such that it may reasonably foresee being brought into court within that forum. Cree, Inc. v. Bridgelux, Inc., 2007 WL 3010532, at *6 (M.D.N.C. July 5, 2007) (declining to exercise personal jurisdiction over a "component manufacturer Defendant . . . on the sole basis that an item is found [in the forum state] which incorporates Defendant's product"). In turn, the test for reasonableness under the third prong is a "multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 429 (Fed. Cir. 1996).

Resolution of whether Defendant Ahmetasevic's activities in certifying the roadworthiness of defendants' trucks in Iowa is sufficient to assert specific jurisdiction in this court pivots on the decision of the Court of Appeals for the Fourth Circuit in Federal Ins. Co. v. Lake Shore Inc., 886 F.2d 654 (1989). In Lakeshore, a cargo winch manufactured by Defendant Lakeshore and mounted to the deck of a cargo vessel built by Defendant Peterson failed, causing property damage to cargo owned by the General Electric Company "G.E." The vessel was owned by a third party. At the time of the accident, the merchant vessel was in the Port of Charleston, South Carolina. The insurer paid G.E. for its loss and, as subrogee, brought an action in the District of South Carolina against the vessel's manufacturer as well as the manufacturer of the winch, neither of which were residents of South Carolina. Defendants

moved to dismiss and the district court determined it lacked jurisdiction. On appeal, the Court of Appeals for the Fourth Circuit affirmed, finding that specific jurisdiction over the manufacturers of the vessel and the winch under a stream of commerce theory was not sufficient. The appellate court noted, however, that it did not reject a "stream of commerce" theory in all circumstances, but concluded it had no applicability in that particular case. Lakeshore, 886 F.2d at 659. Of particular relevance to this case, the defective winch was mounted and employed on a vessel owned and operated by a third party, and the Fourth Circuit determined that the vessel's presence in the Port of Charleston was merely fortuitous as the winch's manufacturer as well as the vessel's manufacturer had no control over where that vessel sailed, holding that "[t]he unilateral activity of another party or a third person cannot satisfy the minimum contacts requirement of due process." Id.

The court finds the distinction to be a crucial one. As a fair reading of the Complaint provides, it is plaintiffs' contention that the Defendant Ahmetasevic was not some third-party contractor who serviced the trailer at issue; rather, plaintiffs allege that he was engaged as a partner in the corporate defendants' interstate trucking business, that he operated from the same physical location in Waterloo, Iowa, and that his course of conduct in certifying defective trailers as roadworthy was in furtherance of an enterprise or conspiracy to violate federal safety regulations. The exhibits annexed to Complaint, which include Compliance Reviews conducted by the USDOT, lend substantial support to such allegations. Thus, based on the allegations of the Complaint, the activities of Defendant Ahmetasevic are the antithesis of the activities of the manufacturer defendants in Lakeshore inasmuch as the activity of Defendant Ahmetasevic were allegedly in concert with and in furtherance of the corporate defendant's shipping business, and it is alleged that he was in fact their partner in such activities, thus

eliminating any reasonable possibility of "unilateral" activity when the Complaint is read in a light most favorable to plaintiffs.

Turning back to the elements of specific jurisdiction under a stream of commerce theory, a *prima facie* case of personal jurisdiction under a stream of commerce standard is met where plaintiffs sufficiently allege and proffer that (1) the alien defendant placed the accused product into the stream of commerce, (2) the alien defendant knew or should have known the likely destination of the product, and (3) the alien defendant's conduct and connections with the forum state are such that it may reasonably foresee being brought into court within that forum. Cree, Inc. v. Bridgelux, Inc., 2007 WL 3010532, at *6 (M.D.N.C. July 5, 2007). In considering whether plaintiffs have met that burden, the court has closely read the allegations of the Complaint and the exhibits annexed thereto along with its responsive brief. Such materials are sufficient to satisfy plaintiff's burden of showing that it was the acts of Defendant Ahmetasevic in certifying the trailer as roadworthy that placed the trailer into the stream of commerce; that he was either a *de jure* or *de facto* partner in the trucking business and well-knew that the trailers he certified would be driven throughout the United States in furtherance of that business; and that in allegedly falsely certifying such a trailer in Iowa, it was reasonably foreseeable that he would be brought into court in the jurisdiction where that trailer eventually failed and caused personal injury to others.

In determining reasonableness as to the third factor, the court has considered the totality of the assertions as well as the totality of the defendant's arguments in his supporting and reply briefs. In considering reasonableness, the court has "weigh[ed] any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient

forum and the forum state's interest in resolving controversies flowing from in-state events." Viam Corp., supra. The balance of factors weighs heavily in favor of resolving this action in one action in the district where the accident occurred and the district within which plaintiffs reside. To require plaintiffs' to pursue its action against an interstate motor carrier and/or its alleged partners in such venture in a distant forum would be unduly burdensome. Indeed, in deciding to engage in the gainful activity of interstate transportation of goods, defendant as an alleged partner in that venture must have reasonably expected to sue or be sued wherever one of the venture's tractor trailers was involved in an accident. While the financial burden of mounting a defense in a foreign forum is considerable, the court considers that a reasonably prudent motor carrier engaged in interstate commerce on the scale herein alleged, see Complaint at ¶ 5, would make provision for such eventuality, including obtaining member/directors insurance, and that even absent such protections, defendants are in a far superior financial position than are plaintiffs to defend this action in a distant forum. Thus, where a motor carrier and its various partners in such venture undertake to transport goods in interstate commerce, it is reasonably foreseeable that they could all be called to answer for their activities in any forum where an alleged equipment failure causes injury to residents of the forum state. Critical to such stream of commerce determination is, that unlike the situation in Lakeshore, Defendant Ahmetasevic's alleged involvement in the family interstate trucking business as a "partner" gave him knowledge and control over not just which equipment was allowed on the highway, but where such equipment might be sent, making the trailer's presence in the Western District of North Carolina more than a fortuitous act of a third-party he did not control, which is unlike the facts in Lakeshore.

IV.

The court finds specific jurisdiction over this defendant, but does, however, reserve the right to revisit this issue if discovery reveals persuasive facts that contradict plaintiff's allegations and proffer.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant Ahmetasevic's Motion to Dismiss (#2) is **DENIED**. Defendant shall file his Answer to the Complaint within 14 days.

Signed: August 16, 2016

Max O. Cogburn Jr
United States District Judge